# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYISHA ROBINSON, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 13-916 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

Before the Court is Tyisha Robinson ("Plaintiff")'s appeal on behalf of her minor child, J.G. ("Claimant"), seeking review of a final determination by Administrative Law Judge ("ALJ") Richard L. De Steno denying her application for supplemental security income. The Court declines Plaintiff's request for oral argument and, thus, resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). For the reasons below, the Court affirms the final decision of the Commissioner of Social Security.

## I.    BACKGROUND

### A.    Medical Evidence Concerning Claimant's Impairments

Plaintiff claims that Claimant is disabled due to his (1) hearing impairment, (2) attention deficit hyperactivity disorder ("ADHD"), and (3) oppositional defiant disorder ("ODD"). The ALJ concluded that these impairments were severe. (R. at 19).[1] A discussion of the medical

---

[1] "R." refers to the pages of the Administrative Record.

evidence pertaining to each of Claimant's impairments, including hospital reports and consultative examinations, follows.

1. <u>Claimant's Hearing Impairment</u>

Claimant has a history of decreased hearing and has been diagnosed with chronic serous otitis media and auditory processing disorder. (*Id.* at 187-88, 199). In April 2009, Claimant had a myringotomy and tubes placed in his ears. (*Id.* at 199). In July 2009, Dr. Diego Saporta conducted a pure tone audiometry examination of Claimant that revealed speech discrimination scores of 96% in both ears. (*Id.* at 184-86).

In August 2009, Consultant Examiner Dr. Gerald West conducted an audiology examination of Claimant and found that Claimant's hearing was then at the high limits of normal with speech discrimination scores of 90% in both ears. (*Id.* at 187-89). Dr. West noted that the tubes placed in Claimant's ears had been of "some help," but that Claimant still had to be called repeatedly to get his attention and had to play the television loudly to hear it. (*Id.* at 187). Dr. West also noted that an examination of Claimant's ears revealed moisture in both external auditory canals. (*Id.*). In spite of Claimant's hearing impairment, Dr. West noted that Claimant was "able to communicate well." (*Id.*).

On October 20, 2009, Claimant met with Dr. Magalia Nelson. (*Id.* at 199). At that time, Claimant was receiving weekly ear canal debridement. (*Id.*). Dr. Nelson noted that Claimant's ear canals were normal and that the tubes in his ears were in "good" positions and lacked discharge. (*Id.*). Dr. Nelson diagnosed Claimant with chronic external otitis, resolved, and chronic otitis media. (*Id.*). The following day, on October 21, 2009, Mashenda Green, APN, conducted a psychiatric evaluation of Claimant at Trinitas Hospital. (*Id.* at 201-05). Plaintiff

informed Nurse Green that Claimant's hearing had improved since the tubes were placed in Claimant's ears. (*Id.* at 202).

### 2. Claimant's ADHD and ODD

Claimant began attending ADHD support groups in June 2009. (*Id.* at 202). In July 2009, a psychiatrist at Trinitas Hospital assigned Claimant a Global Assessment Functioning ("GAF") rating of sixty,[2] and diagnosed Claimant with ADHD, combined type, and ODD. (*Id.* at 227).

In October 2009, Claimant's school referred him to Trinitas hospital for a psychiatric evaluation. (*Id.* at 201-05). Nurse Green conducted the evaluation. (*Id.* at 201-205). At that time, Claimant was in the fourth grade. (*Id.* at 203). Nurse Green noted that the school referred Claimant because of his hyperactive behavior, inability to focus, highly distractible behavior, and frequent fighting in school. (*Id.* at 201). Plaintiff told Nurse Green that Claimant engaged in similar behaviors while at home and also fought with his siblings. (*Id.* at 202). Plaintiff also informed Nurse Green that she had received numerous telephone calls from Claimant's school reporting misbehavior. (*Id.* at 202). Plaintiff also told Nurse Green that there had been some improvement since Claimant had tubes placed in his ears. (*Id.*).

According to Nurse Green's mental status examination of Claimant, Claimant was cooperative, his speech was normal, and his mood was neutral with a congruent affect. (*Id.* at 204). Nurse Green's examination further revealed that Claimant was easily frustrated and

---

[2] The GAF Scale ranges from zero to one-hundred. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) (hereinafter DSM-IV-TR). An individual's "GAF rating is within a particular decile if *either* the symptom severity or the level of functioning falls within the range." *Id.* at 32. "[I]n situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." *Id.* at 33. "In most instances, ratings on the GAF Scale should be for the current period (*i.e.*, the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care." *Id.* A GAF rating of fifty-one to sixty indicates that an individual has "[m]oderate symptoms," *e.g.*, "flat affect and circumstantial speech, [or] occasional panic attacks," or "moderate difficulty in social, occupational, or school functioning," *e.g.*, "few friends, conflicts with peers . . . ." *Id.* at 34.

angered, fidgeted frequently, was clumsy and forgetful, lacked impulse control, frequently acted before he thought, and had fair judgment and insight. (*Id.*). Nurse Green assigned Claimant a GAF rating of forty-five to fifty and diagnosed Claimant with ADHD, combined type, and ODD.[3] (*Id.* at 204-05). Nurse Green ruled out the possibility that Claimant had a learning disorder related to reading or mood disorder. (*Id.* at 204). Nurse Green recommended treatment with medication, particularly Concerta, monthly medication monitoring, and continued participation in the ADHD group. (*Id.* at 205). Trinitas Hospital prescribed Claimant Concerta in October 2009 and continued to prescribe it until at least April 2011. (*Id.* at 237).

In November 2009, a doctor at Trinitas Hospital noted that Plaintiff was "very happy" because Claimant had improved both academically and behaviorally. (*Id.* at 207). The doctor noted that Claimant was very proud of himself and that Plaintiff reported a decrease in Claimant's fighting and irritability. (*Id.*). The doctor also noted that Claimant had a neutral and appropriate mood/affect, a goal oriented thought process/content, and intact cognitive functioning. (*Id.*). In April 2011, Nurse Green noted that Claimant, who was at that time in the fifth grade, was classified as having a learning disorder and behavioral disability. (*Id.* at 238).

B.  Claimant's School Records

Claimant's fourth grade teacher, Michelle DelBene, spent two school years with Claimant because Claimant had to repeat the fourth grade. (*See id.* at 105-12, 166-73). DelBene's records from September to December 2008 noted that Claimant fooled around constantly, talked too much, and was failing most subjects. (*Id.* at 106-07). According to DelBene, on December 5, 2008, Claimant stayed outside longer for recess than he should have and did not come inside with his classmates. (*Id.* at 106).

---

[3] A GAF rating of forty-one to fifty indicates that an individual has either "[s]erious symptoms" or "serious impairment in social, occupational, or school functioning . . . ." DSM-IV-TR 34.

4

In December 2009, DelBene completed a teacher questionnaire for the Division of Disability Determination Services. (*Id.* at 166-73). In said questionnaire, DelBene rated Claimant's capacity to perform certain activities that the Social Security Administration considers probative of whether a child has a marked or extreme limitation in each of the six domains.[4] (*Id.* at 167-72). A teacher completing the questionnaire could rate a child's capacity to perform an activity on a scale from one to five. (*Id.*). A rating of "one" signified that Claimant had no problem, a rating of "two" signified that Claimant had a slight problem, a rating of "three" signified that Claimant had an obvious problem, a rating of "four" signified that Claimant had a serious problem, and a rating of five signified that Claimant had a very serious problem. (*Id.*).

With regard to Claimant's ability to acquire and use information, in the context of performing ten probative activities, DelBene made the following findings. (*Id.* at 167). DelBene found that Claimant had a serious problem with providing organized oral explanations and adequate descriptions. (*Id.*). DelBene also found that Claimant had obvious problems with: (1) understanding school and content vocabulary; (2) reading and comprehending written material; (3) comprehending and doing math problems; (4) expressing ideas in written form; (5) learning new material; (6) recalling and applying previously learned materials; and (7) applying problem-solving skills in class discussions. (*Id.*). Lastly, DelBene found that Claimant had slight problems with (1) comprehending oral instructions and (2) understanding and participating in class discussions. (*Id.*). DelBene noted the following additional information about Claimant's ability to acquire and use information: Claimant received help from a reading tutor and was

---

[4] The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects, (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The Court explains their importance in the legal standard section of the Opinion.

pulled out of class daily for corrective reading; Claimant's hearing had improved significantly after he had tubes placed in his ears, and that, as a result, Claimant understood his schoolwork better than he had in the prior school year; and that, despite this improvement, Claimant possessed second-to-third-grade level reading skills, third-grade level writing skills, and third-grade level math skills. (*Id.* at 166-67).

With regard to Claimant's ability to attend and complete tasks, in the context of performing thirteen probative activities, DelBene made the following findings. (*Id.* at 168). DelBene found that Claimant had obvious problems with: (1) changing from one activity to another without being disruptive; (2) completing work accurately without careless mistakes; and (3) working without distracting himself or others. *Id.* DelBene also found that Claimant had slight problems with: (1) paying attention when spoken to directly; (2) focusing long enough to finish assigned activities or tasks; (3) refocusing to task when necessary; (4) carrying out multi-step instructions; (5) waiting to take turns; and (6) working at a reasonable pace or finishing on time. (*Id.*). Lastly, DelBene found that Claimant had no problems with: (1) sustaining attention during play or sports activities; (2) carrying out single-step instructions; (3) organizing his own things or school materials; and (4) completing class or homework assignments. (*Id.*). DelBene noted the following additional information about Claimant's ability to attend and complete tasks. DelBene noted that Claimant's ability to focus and stay on task had improved since he began taking medication. (*Id.*). She also noted that Plaintiff signed Claimant's homework book daily to ensure that Claimant wrote his assignments down accurately and took his books and materials home with him. (*Id.*).

With regard to Claimant's ability to interact and relate with others, in the context of performing thirteen probative activities, DelBene made the following findings. (*Id.* at 169).

DelBene found that Claimant had obvious problems with: (1) expressing anger appropriately, (2) respecting or obeying adults in authority; and (3) introducing and maintaining relevant and appropriate topics of conversation. (*Id.*). DelBene also found that Claimant had slight problems with: (1) playing cooperatively with other children; (2) seeking attention in an appropriate manner; (3) following rules in the classroom, and during games and sports activities; and (4) using adequate vocabulary and grammar to express his thoughts or ideas. (*Id.*). DelBene found that Claimant had no problems with: (1) making and keeping friends; (2) asking permission appropriately; (3) relating experiences and telling stories; (4) using language appropriate to the situation and listener; (5) taking turns in a conversation; and (6) interpreting the meaning of facial expressions, body language, hints, or sarcasm. (*Id.*). DelBene noted the following additional information about Claimant's ability to interact and relate with others. DelBene noted that Claimant had a core group of friends, tended to instigate children that he disliked, and frequently stole things from his peers. (*Id.*). DelBene also noted that Claimant's friendships had to be monitored closely because he was a follower and did not always choose appropriate role models. (*Id.*).

With regard to Claimant's ability to move about and manipulate objects, DelBene found that Claimant had no problems. (*Id.* at 170).

With regard to Claimant's ability to care for himself, in the context of performing ten probative activities, DelBene made the following findings. (*Id.* at 171). DelBene found that Claimant had a serious problem with judgment regarding his personal safety and dangerous circumstances. (*Id.*). DelBene also found that Claimant had obvious problems with: (1) handling frustration appropriately; (2) being patient when necessary; (3) identifying and appropriately asserting emotional needs; (4) responding appropriately to changes in his own

mood; and (5) using appropriate coping skills to meet the daily demands of the school environment. (*Id.*). Additionally, DelBene found that Claimant had slight problems with (1) cooperating in, or being responsible for, taking needed medications and (2) knowing when to ask for help. (*Id.*). Lastly, DelBene found that Claimant had no problems with (1) taking care of his personal hygiene, and (2) caring for his physical needs such as dressing and eating. (*Id.*). DelBene also noted that Claimant tended to "shut down" when frustrated or angry and would follow his friends' actions even when he knew that doing so was wrong. (*Id.*). DelBene wrote that when Claimant was angry he could become defiant and stubborn, but would eventually calm down and resume his activities if she ignored or coerced him. (*Id.*).

Finally, with regard to Claimant's health and well-being, DelBene noted that Claimant's daily use of ADHD medication made him more focused. (*Id.* at 172). DelBene also noted that Claimant attended anger management counseling at Trinitas Hospital on a weekly basis. (*Id.*).

C.    Procedural History

On May 4, 2009, Plaintiff filed an application for supplemental security income on behalf of Claimant with the Social Security Administration. (*Id.* at 91-98). The Administration denied Plaintiff's application and subsequent request for reconsideration. (*Id.* at 51-56). In response, Plaintiff filed a request for a hearing before an ALJ with the Office of Disability Adjudication and Review. (*Id.* at 59-60).

ALJ De Steno presided over this hearing on April 7, 2011, in Newark, New Jersey. (*Id.* at 32). After reviewing the facts of Claimant's case, on May 31, 2011, ALJ De Steno issued a decision finding that Claimant was not disabled from the date that Plaintiff filed her application through the date of decision.[5] (*Id.* at 12-28).

---

[5] Supplemental security income benefits are not payable for any month prior to the month after the application for such benefits is filed. 20 C.F.R. § 416.335.

Plaintiff sought Appeals Council review. (*Id.* at 7). The Appeals Council denied Plaintiff's request on December 13, 2012, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1). Plaintiff appealed to this Court on February 14, 2013. (Compl. 1-3, ECF No. 1). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g).

## II. LEGAL STANDARD

### A. The Three-Step Process for Evaluating Whether a Child is Disabled

Under the Social Security Act, the Social Security Administration is authorized to pay supplemental security income to "disabled" persons. 42 U.S.C. § 1382(a). A child, *i.e.*, "[a]n individual under the age of 18," is "disabled" if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

Regulations promulgated under the Social Security Act establish a three-step process for determining whether a child is disabled. 20 C.F.R. § 416.924. At step one, the ALJ assesses whether the child is currently engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If so, the child is not disabled and, thus, the process ends. *Id.* If not, the ALJ proceeds to step two and determines whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Absent such an impairment or combination of impairments, the child is not disabled. *Id.* Conversely, if the child has such an impairment or combination of impairments, the ALJ proceeds to step three. 20 C.F.R. § 416.924(a).

At step three, the ALJ determines whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment in the appendix. 20 C.F.R. § 416.924(d). An impairment or combination of impairments "medically

equals" a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). An impairment or combination of impairments "functionally equals" a listed impairment if the child has either two "marked" limitations or one "extreme" limitation in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; or (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" if it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). Such a limitation is " 'more than moderate' but 'less than extreme.' " *Id.* A limitation is "extreme" if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). While an extreme limitation is "more than marked," it is not necessarily the equivalent of "a total lack or loss of ability to function." *Id.* In assessing whether an impairment or combination of impairments "functionally equals" a listed impairment, the ALJ considers "all the relevant factors," including the effectiveness of the child's medication, the child's ability to function in school, and the effects of structured settings on the child's performance. 20 C.F.R. § 416.926a(a)(1)-(3). If the child has an impairment that meets, medically equals, or functionally equals a listed impairment, the child is considered disabled under the Social Security Act. 20 C.F.R. § 416.924(d)(1).

B.     The Standard of Review: "Substantial Evidence"[6]

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[6] Because the regulations governing supplemental security income—20 C.F.R. § 416.920—are identical to those covering disability insurance benefits—20 C.F.R. § 404.1520—this Court will consider case law developed under both regimes. *Rutherford v. Barnhart*, 399 F.3d 546, 551 n. 1 (3d Cir. 2005) (citation omitted).

10

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

## III. DISCUSSION

After applying the three-step process, the ALJ concluded that Claimant had not been disabled from the date that Plaintiff filed Claimant's application through the date of decision. (R. at 27). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity. (*Id.* at 19). At step two, the ALJ found that Claimant's hearing impairment, ADHD, and ODD were severe impairments. (*Id.*). At step three, the ALJ found that these severe impairments did not meet, medically equal, or functionally equal a listed impairment. (*Id.* at 19-27). Plaintiff contends that the ALJ's findings at step three concerning medical and functional equivalence are not based on substantial evidence. (*See* Pl. Br. 5-16, ECF No. 10).

### A. Whether the ALJ's Finding that Claimant Did Not Have an Impairment or Combination of Impairments That Met or Medically Equaled a Listed Impairment is Based on Substantial Evidence

Plaintiff contends that the ALJ's finding concerning medical equivalence is not based on substantial evidence because the ALJ did not adequately: (1) explain why Claimant's ADHD did not meet or medically equal listing 112.11; (2) explain why Claimant's ODD did not meet or medically equal listing 122.08; and (3) assess whether the combination of Claimant's

11

impairments medically equaled a listed impairment. (*Id.* at 7-13). The Court addresses each of Plaintiff's contentions in turn.

       1.    Whether the ALJ's Finding that Claimant's ADHD Did Not Meet or Medically Equal Listing 112.11 is Based on Substantial Evidence

Plaintiff argues that contrary to *Cotter v. Harris* and its progeny, the ALJ failed to adequately explain why Claimant's ADHD did not meet or medically equal listing 112.11. (Pl. Br. 7-11). In *Cotter*, the Third Circuit held that an ALJ should provide "a clear and satisfactory explication of the basis on which [his decision] rests." 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit later clarified in *Burnett v. Commissioner of Social Security Administration* that an ALJ must "fully develop the record and explain his findings at step three, including an analysis of whether and why [each of the claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." 220 F.3d 112, 120 (3d Cir. 2000). "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, the ALJ's decision, "read as a whole," must permit meaningful judicial review by developing the record and explaining its findings. *Id.*; *Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007) (citations omitted). Here, the ALJ's explanation as to why Claimant's ADHD did not meet or medically equal listing 112.11 satisfies the *Cotter* line of cases.

A child's ADHD meets or medically equals listing 112.11 if there are medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity in addition to marked limitations in at least two of the following categories: (1) age-appropriate cognitive/communicative functioning; (2) age-appropriate social functioning; (3) age-appropriate personal functioning; or (4) difficulties in maintaining concentration, persistence, or pace. 20

C.F.R. Pt. 404, Subpt. P, App'x. 1, Pt. B 112.11. Here, the ALJ found that the record did not

show that Claimant's ADHD met listing 112.11. (R. at 20). The ALJ explained that Claimant

"is in regular classes, has friends, is able to perform self-care, such as getting dressed and

brushing his teeth, and has improved ability to maintain focus due to medication." (*Id.*).

Plaintiff contends that this explanation is inadequate pursuant to the *Cotter* line of cases

because it fails to mention certain facts and is overly ambiguous. (*See* Pl. Br. 9-11). For

instance, Plaintiff notes that although the ALJ's step three explanation mentions that Claimant is

in "regular classes," it fails to mention that Plaintiff was held back for one year. (*Id.* at 9-10).

For the reasons that follow, the Court disagrees that the ALJ's opinion is inadequate.

As there is no requirement that an ALJ "use particular language or adhere to a particular

format in conducting his analysis," there is no requirement that an ALJ mention all evidence

related to a step-three finding in that section of the opinion. *Jones*, 364 F.3d at 505; *see also*

*King v. Comm'r of Soc. Sec.*, No. 12-6573, 2013 WL 6188386, *8 (D.N.J. Nov. 26, 2013)

(citation omitted) ("To the extent that Plaintiff attempts to invoke *Cotter v. Harris*, the standard

before the reviewing court is not that the ALJ must mention every shed of evidence."). Rather,

"the ALJ's decision, read as a whole, [must] illustrate[] that the ALJ considered the appropriate

factors . . . ." *Jones*, 364 F.3d at 505. Here, the ALJ's decision satisfies that standard.

While the ALJ's step-three explanation does not mention certain facts highlighted by

Plaintiff, the ALJ's decision elsewhere mentions and develops these facts. (R. at 15-19). Thus,

the ALJ's decision read as whole provides a "sufficient development of the record and

explanation of findings to permit meaningful judicial review." *Jones*, 364 F.3d at 505; *see also*

*Jaramillo ex rel. Mesa v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 561 (3d Cir. 2005)

(concluding that an ALJ's decision was sufficient and permitted meaningful judicial review

because the ALJ "identified the specific Listings to which he was referring" and "discussed the evidence presented at length."). Accordingly, the ALJ's explanation as to why Claimant's ADHD did not meet or medically equal Listing 112.11 satisfies *Cotter* and its progeny. *See, e.g.*, *Watkins v. Comm'r of Soc. Sec.*, 131 F. App'x 362, 365 (concluding that ALJ adequately supported finding that claimant's ADHD did not meet or medically equal Listing 112.11 because ALJ "point[ed] to specific evidence that supported his conclusion . . . .").

### 2. Whether the ALJ's Finding that Claimant's ODD Did Not Meet or Medically Equal Listing 112.08 is Based on Substantial Evidence

Plaintiff contends that the ALJ's finding that Claimant's ODD did not meet or medically equal listing 112.08 is not based on substantial evidence. (*see* Pl. Br. 11-13). A child's ODD meets listing 112.08 if three total requirements are met. 20 C.F.R. Pt. 404, Subpt. P, App'x. 1, Pt. B 112.08. The child must have "deeply ingrained, maladaptive patterns of behavior, associated with one of the following: [1] Seclusiveness or autistic thinking; or [2] Pathologically inappropriate suspiciousness or hostility; or [3] Oddities of thought, perception, speech, and behavior; or [4] Persistent disturbances of mood or affect; or [5] Pathological dependence, passivity, or aggressiveness; or [6] Intense and unstable interpersonal relationships and impulsive and exploitative behavior; or [7] Pathological perfectionism and inflexibility . . . ." *Id.* In addition, the child must have marked limitations in at least two of the following categories: (1) age-appropriate cognitive/communicative functioning; (2) age-appropriate social functioning; (3) age-appropriate personal functioning; or (4) difficulties in maintaining concentration, persistence, or pace. *Id.*

In this matter, the ALJ found that Claimant's ODD did not meet or medically equal listing 112.08. (R. at 20). In support of this finding, the ALJ discussed some of DelBene's observations of Claimant. (*Id.*). The ALJ noted that DelBene observed that although Claimant

could become defiant and stubborn when angry, she was able to calm him down enough to enable him to resume his activities. (*Id.*). The ALJ also noted that DelBene observed that Claimant's fighting and irritability had decreased once he started medication. (*Id.*). Lastly, the ALJ referred back to his finding that Claimant "is in regular classes, has friends, is able to perform self-care, such as getting dressed and brushing his teeth, and has improved ability to maintain focus due to medication." (*Id.*).

This analysis constitutes substantial evidence in support of the ALJ's finding. *See, e.g.,* *Watkins*, 131 F. App'x 362, 366 (3d Cir. 2005) (suggesting that evidence of progress constitutes substantial evidence in support of ALJ's finding). Furthermore, when the ALJ's decision is read as whole, it is clear that it provides a "sufficient development of the record and explanation of findings to permit meaningful judicial review." *Jones*, 364 F.3d at 505.

3. Whether the ALJ Adequately Assessed Whether the Combination of Claimant's Impairments Medically Equaled a Listed Impairment

Plaintiff contends that the Court should remand this case to the ALJ for failure to examine Claimant's combined impairments to determine medical equivalence. (Pl. Br. 6-8). An ALJ fulfills his obligation to consider a claimant's impairments in combination if the ALJ explicitly indicates that he has done so and there is "no reason not to believe him." *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008).

Here, the ALJ explicitly indicated at the beginning of his step three discussion that Claimant "does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments . . . ." (R. at 19). Given the ALJ's thorough discussion of the record throughout his opinion and detailed explanation of why each of Claimant's impairments did not meet a listing, the Court finds no reason to disbelieve the ALJ's indications that he considered the combined effect of Claimant's impairments. *See Jones*, 364 F.3d at 505

(finding ALJ's step-three determination adequate because ALJ's decision, "read as a whole," illustrated that ALJ considered the appropriate factors); *see also Gainey v. Astrue*, No. 10-1912, 2011 WL 15660865, *12 (D.N.J. Apr. 25, 2011) (citation omitted) (holding that "ALJ's detailed analysis of the individual impairments and conclusion that Plaintiff did not have 'an impairment or combination of impairments' that met or equaled a listing is sufficient."). Accordingly, the Court finds that the ALJ's step-three findings are based on substantial evidence.

  B. <u>Whether the ALJ's Finding that Claimant Did Not Have an Impairment or Combination of Impairments That Functionally Equaled a Listed Impairment is Based on Substantial Evidence</u>

Plaintiff contends that the ALJ's finding that Claimant does not have an impairment or combination of impairments that functionally equals the listings is not based on substantial evidence. (Pl. Br. 13-16). Plaintiff attacks the ALJ's findings that Claimant had a less than marked limitation in the following three domains: (1) acquiring and using information; (2) attending and completing tasks; and (3) interacting and relating with others. (*Id.*). For the reasons that follow, the Court concludes that the ALJ's explanations as to why Claimant had a less than marked limitation in each of these three domains are sufficient to permit meaningful judicial review and are supported by substantial evidence.

  1. <u>Whether the ALJ's Finding That Claimant Had a Less Than Marked Limitation in Acquiring and Using Information is Based on Substantial Evidence</u>

The domain of acquiring and using information focuses on "a child's ability to learn information and to think about and use the information." S.S.R. 09-3p. When assessing this domain, an ALJ may consider, among other limitations, whether a child reads, writes, or does arithmetic at the appropriate level. *Id.* An ALJ may also consider whether a child has difficulty

understanding and following directions. *Id.* Notably, these limitations do not necessarily describe a "marked" or an "extreme" limitation. *Id.*

Here, the ALJ acknowledged that Claimant's reading, written language, and math skills were one grade below grade level. (R. at 22). The ALJ also acknowledged that Claimant was held back in the fourth grade and was classified for behavioral issues and learning disabilities. (*Id.*). Nonetheless, the ALJ found that Claimant had a less than marked limitation in acquiring and using information because: (1) Claimant's hearing had improved with the placement of tubes in his ears; (2) Claimant's vision had improved with glasses; (3) Claimant's ability to focus had improved with medications; (4) Claimant's teacher, DelBene, noted that Claimant was starting to do better in school; (5) Claimant had advanced to the fifth grade after repeating the fourth grade; and (6) Claimant was in regular classes. (*Id.*).

Plaintiff contends that the ALJ's explanation as to why Claimant had a less than marked limitation in acquiring and using information is deficient because it places too much emphasis on Claimant's placement in regular classes and DelBene's statement that Claimant was starting to do better in school. (*See* Pl. Br. 14-15). Plaintiff also contends that the ALJ neglected to mention that Claimant spent some of his school day in special classes. (*Id.*).

However, this Court finds that the six reasons offered by the ALJ here are sufficient to support his finding, and notes that the Court may not now "weigh the evidence or substitute its conclusions for those of the fact finder." *Williams*, 970 F.2d at 1182 (citation omitted). The Third Circuit has found that a teacher's observation that a claimant has improved in school can constitute substantial evidence in support of an ALJ's finding. *See Watkins*, 131 F. App'x 362, 366 (3d Cir. 2005) (finding teachers observation that claimant "made progress in school and is now capable of completing tasks that he is asked to perform" constituted substantial evidence in

support of ALJ's finding).  Lastly, the ALJ's decision "read as whole," *Jones* 364 F.3d at 505, acknowledges that although Claimant was in regular classes, he "received help from the reading tutor and was pulled out for corrective reading daily." (R. at 16).

2.    Whether the ALJ's Finding That Claimant Had a Less Than Marked Limitation in Attending and Completing Tasks is Based on Substantial Evidence

When assessing the domain of attending and completing asks, ALJs "consider a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks." S.S.R. 09-4p.  Additionally, ALJs "consider the child's ability to initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distractions, and to perform tasks at an appropriate pace." *Id.*  ALJs also "consider the child's ability to change focus after completing a task and to avoid impulsive thinking and acting." *Id.*  Finally, ALJs "evaluate a child's ability to organize, plan ahead, prioritize competing tasks, and manage time." *Id.*

Here, the ALJ provided four reasons in support of his finding that Claimant had a less than marked limitation in the domain of attending and completing tasks. (*See* R. at 23-24).  First, the ALJ noted that Claimant's behavior and schoolwork had improved after he began taking medication. (*Id.*).  Relatedly, the ALJ noted that a November 2009 medical report stated that Claimant's cognitive functioning was intact and that his thoughts were goal-oriented. (*Id.* at 23).  Second, the ALJ referred to DelBene's ratings of Claimant's ability to partake in thirteen activities pertaining to attending and completing tasks. (*Id.*).  The ALJ noted that DelBene did not rate Claimant's ability to partake in any of the thirteen activities as a serious or very serious problem. (*See id.* at 23).  Instead, DelBene rated Claimant's ability to partake in just three of these activities—(1) working without distracting himself or others, (2) completing work

accurately, and (3) changing from one activity to another—as obvious problems. (*Id.*). For the remaining ten activities, DelBene rated Claimant as having either a slight problem or no problem. (*Id.* at 23, 168). Third, the ALJ noted that Plaintiff and DelBene monitored Claimant's completion of assignments. (*Id.* at 23). Last, the ALJ noted that Plaintiff had reported that Claimant's schoolwork and behavior had improved with medication. (*Id.*).

Plaintiff asserts that the ALJ improperly treated DelBene's ratings of Claimant's capacity to partake in the thirteen activities pertaining to attending and completing tasks. (Pl. Br. 15). According to Plaintiff, the ALJ downplayed DelBene findings that Claimant had "obvious problems" performing three of the activities by "throw[ing] in irrelevancies," such as DelBene's findings that Claimant had a "slight problem" or "no problem" performing the other ten activities. (*Id.*).

The Court finds Plaintiff's assertion unavailing. DelBene's other ten ratings were, in fact, highly relevant. The teacher questionnaire explicitly listed those activities under the heading "Attending and Completing Tasks," and the activities measured factors are outlined as relevant in S.S.R. 09-4p. (R. at 168). Ultimately, the ALJ "adequately articulated a sufficient evidentiary basis for his decision." *Jaramillo*, 130 F. App'x at 562.

> 3. Whether the ALJ's Finding That Claimant Had a Less Than Marked Limitation in Interacting and Relating With Others is Based on Substantial Evidence

The domain of interacting and relating with others focuses on "a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others." S.S.R. 09-5p. "Important aspects" of this domain include "the child's response to persons in authority, compliance with rules, and regard for the possessions of

others." *Id.* Additionally, ALJs consider in this domain "the speech and language skills children need to speak intelligible and to understand and use the language of their community."

Here, the ALJ found that Claimant had a less than marked limitation in interacting and relating with others. (R. at 24-25). In making this finding, the ALJ acknowledged the facts that Plaintiff now argues supported a contrary finding. (Pl. Br. 15-16). Namely, the ALJ acknowledged that Claimant's teacher, DelBene, observed that Claimant took things that did not belong to him, instigated children that he did not like, and sometimes followed his friends' actions even when he knew that doing so was wrong. (R. at 24-25). In addition, however, the ALJ cited other evidence that supported his finding.

In support of his finding, the ALJ noted that Dr. West observed that Claimant communicated well. (*Id.* at 24) The ALJ also noted that Plaintiff had reported that Claimant was less irritable and fought less. (*Id.*). The ALJ referred to DelBene's observation that Claimant's speech was understandable and to her ratings of Claimant's capacity to partake in the thirteen relevant activities. (*Id.*). The ALJ noted that DelBene rated Claimant's capacity to partake in just three of these activities—(1) expressing anger appropriately, (2) respecting or obeying adults in authority, and (3) introducing and maintaining relevant and appropriate topics of conversation—as "obvious" problems. (*Id.*). The ALJ further noted that DelBene rated Claimant's capacity to partake in the other ten activities as "slight problems" or "no problems." (*Id.*). In citing to this evidence, the ALJ provided substantial evidence in support of his finding. *See, e.g., Whitsett ex rel. Whitsett v. Comm'r of Soc. Sec.*, 134 F. App'x 493, 496 (3d Cir. 2005) (finding ALJ's functional equivalence determination sufficient where ALJ discussed factual record before reaching his conclusion).

## IV. CONCLUSION

The Court has reviewed the entire record and, for the reasons discussed above, finds that the ALJ's determination that Claimant was not disabled was supported by substantial evidence. Accordingly, the Court affirms the ALJ's decision. An appropriate order accompanies this opinion.

DATED: January 6, 2014

JOSE L. LINARES
U.S. DISTRICT JUDGE